IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **K.MIZRA LLC,** *Plaintiff,* *v.* **NXP USA, INC.,** *Defendant,* | §§§§§§§§§§ | **CASE NO. 7:25-CV-00304-DC-DTG** |

**REPORT & RECOMMENDATION TO DENY MOTION TO DISMISS (DKT. NO. 30)**

**TO: THE HONORABLE DAVID COUNTS, UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Pending before the Court is the defendant, NXP USA, Inc.'s motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 30). The motion is fully briefed, and the Court finds that a hearing is unnecessary. After careful consideration of the briefs, arguments, and the applicable law, the Court **RECOMMENDS** that the motion to dismiss be **DENIED**.

## I. BACKGROUND

In this case, the plaintiff, K.Mizra, LLC, filed suit against the defendant, NXP USA, Inc., seeking to recover for the alleged direct and indirect infringement of U.S. Patent Nos. 8,183,887 (the '887 patent), 8,693,556 (the '556 patent), 9,437,279 (the '279 patent), 10,331,379 (the '379 patent), 9,160,466 (the '466 patent"), and 9,111,608 (the '608 patent). Dkt. No. 27 at 1. The

defendant claims that the plaintiff's allegations are deficient and moves to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 30).

## II. ANALYSIS

To survive the defendant's motion to dismiss under Rule 12(b)(6), the plaintiff's complaint needs to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff meets this standard if the facts as plead allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Simply reciting claim elements or making conclusory allegations are insufficient to meet this standard. *See Textile Comput. Sys., Inc. v. Broadway Nat'l Bank*, 620 F.Supp.3d 557, 561–62 (W.D. Tex. 2022). In the context of a patent case, this requires the plaintiff to allege enough facts to put "a potential infringer . . . on notice of what activity or device is being accused of infringement." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013); *see also Golden v. Apple Inc.*, 819 F. App'x 930, 930–31 (Fed. Cir. 2020) (Patent infringement claims "are subject to the pleading standards established by . . . *Twombly*, 550 U.S. 544 . . . and . . . *Iqbal*, 556 U.S. 662 . . . .").[1] When deciding this motion, the Court takes all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).

In patent infringement suits, a plaintiff does not need to prove its case at the pleading stage. *Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1346 (Fed. Cir. 2021) (citing *In re*

[1] Before December 1, 2015, when Fed. R. Civ. P. 84 and Form 18 were abrogated, "Form 18 in the Appendix of Forms provided a form adequate to plead a direct infringement patent claim." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1258 (Fed. Cir. 2018) (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)). Now that Form 18 has been eliminated, the pleading standard for direct infringement is governed by *Twombly* and *Iqbal*. *See Golden*, 819 F. App'x at 930–31.

*Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Still, "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F3d 1337, 1348–50 (Fed. Cir. 2018)). This does not require the plaintiff to plead infringement on an element-by-element basis. *Id.* at 1352. If the parties dispute what a claim requires, courts ruling on a motion to dismiss should generally adopt the non-moving party's constructions or, if it wishes, engage in claim construction, provided the parties are given notice and an opportunity to be heard. *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1222 (Fed. Cir. 2025). While "sometimes a claim's meaning may be so clear . . . that no additional process is needed," courts must refrain from construing claims against the non-movant without providing them an opportunity to be heard if the parties are both able to identify portions of the specification that arguably support their preferred interpretations. *Id.* (quoting *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024)).

## A. Direct Infringement.

The defendant moves to dismiss the plaintiff's claims for direct infringement on each of the patents-at-issue. The undersigned considers the patents individually and finds that the amended complaint meets its burden for each claim.

### 1. The Complaint States a Claim for Direct Infringement of the '887 Patent.

The '887 patent protects a "high speed signaling system with adaptive transmit pre-emphasis." U.S. Patent No. 8,183,887, at [54] (filed Jan. 25, 2010). The plaintiff claims that the defendant's products which are enabled with a "PCIe 3.0 interface" infringe on at least claim 19 of the '887 patent. Dkt. No. 27 ¶ 55. Claim 19 reads:

An apparatus, comprising:

> a set of drivers to transmit a digital sequence to a receiver, each driver controlled in association with one of a plurality of taps; and
>
> an update circuit to update a tap weight associated with at least one of the plurality of taps responsive to feedback from the receiver, the feedback representing a setting for the at least one of the plurality of taps, the feedback adjusted to compensate for a target signal level.
>
> '887 patent col. 54 l. 30–38.

In its amended complaint, the plaintiff outlines specific factual allegations regarding how one of the defendant's products, the NXP QorIQ LX2162A Processor (the "LX2162A Processor"), infringes upon claim 19. *See* Dkt. No. 27 ¶¶ 55–67. Still, the defendant argues that this claim should be dismissed as implausible, because the factual allegations "either have nothing to do with the LX2162A Processor or accuses different functionality of that product than the accused PCI Express 3.0 controller." Dkt. No. 30 at 3. The defendant also attacks the plaintiff's reliance on some third-party technical materials to support its claim. *Id.* at 3–4. But the plaintiff argues that its amended complaint sufficiently ties each claim element to the accused PCIe equalization features and supports its allegations to the defendant's own documents. Dkt. No. 33 at 3. The third-party technical materials, the plaintiff contends, are only meant to provide additional details and explanation for the underlying technology and their use does not undermine its otherwise-supported factual allegations. *See id.*

At the pleading stage, the plaintiff need only satisfy a "notice-and-plausibility" standard—it must identify the accused device thoroughly enough to put the defendant on notice as to what it must defend and provide sufficient factual allegations in support. Having reviewed the complaint, the Court finds that this standard has been met. The plaintiff's factual allegations are not so inconsistent with the claim's terms that it renders a finding of infringement implausible. *See Bot M8 LLC*, 4 F.4th at 1346 (cautioning that dismissal may be proper if the

facts as pleaded are inconsistent with the claim elements). The amended complaint explains how the accused device's features are alleged to meet the patent's claim elements and supports its assertions with evidence sourced from the defendant. *See* Dkt. No. 27 ¶¶ 59–67. At this level, the plaintiff's burden has been met, and the undersigned rejects the plaintiff's argument as to the '887 patent.

**2. The Complaint States a Claim for Direct Infringement of the '556 Patent.**

The '556 patent protects a "communication channel calibration for drift conditions." U.S. Patent No. 8,693,556, at [54] (filed Mar. 18, 2013). The plaintiff contends that the defendant's products which have LPDDR3 and/or LPPDR4 controller functionality infringe upon at least claim 10 of the '556 patent. Dkt. No. 27 ¶ 76–78. Claim 10 reads:

> An integrated circuit, comprising:
>
> an interface for a communication channel;
> logic to apply a parameter associated with transmission of data on the communication channel;
>
> logic to process a calibration sequence to establish an operation value that represents the parameter, and to transmit or receive data in accordance with the operation value;
>
> logic to determine adjustment information for the parameter, interspersed with said transmission or reception of data on the communication channel; and
>
> logic to adjust the operation value for the parameter using said adjustment information.
>
> '556 patent col. 22 l. 4–16.

The plaintiff's complaint raises specific factual allegations for how the defendant's i.MX 7Dual Application Processor, which is equipped with LPDDR3 functionality, infringes on the claim elements. *See* Dkt. No. 27 ¶¶ 88–98. The complaint specifically focuses on a process called "write leveling," which is performed by the LPDDR3 functionality. *Id.* The complaint

compares the logical processes performed by the write leveling process to the logical processes covered by the claim language. *See id.*

The defendant first contends that the plaintiff only provides specific infringement allegations for the i.MX 7Dual Application Processor as it interfaces with LPDDR3 functionality. It contends that the plaintiff fails to make any allegations regarding other technologies, including those with LPDDR4 functionality. Dkt. No. 30 at 5. The plaintiff counters that the i.MX 7Dual Application Processor is identified as an "exemplary" technology and alleges a "materially similar functionality" for the defendant's products which utilize a LPDDR4 functionality. Dkt. No. 33 at 4.

The Court finds the plaintiff's allegations are sufficient at the pleading stage. To survive a 12(b)(6) motion, all the plaintiff needs to do is identify the accused device thoroughly enough to put the defendant on notice as to what it needs to defend. *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 712 (Fed. Cl. 2021) (collecting cases). The plaintiff has identified the functionalities that it alleges infringes on the '556 patent, mapped the claim to the LPDDR3 functionality in detail, and asserted that the LPDDR4 functionality infringes in the same manner. At this stage, that is sufficient detail to put the defendant on notice as to which products it must defend. The undersigned therefore rejects this argument.

The defendant next attacks the plausibility of the plaintiff's allegations based off of the patent's specification, which reads, "[t]he present invention relates to the calibration of communication channel parameters in systems, including monochronous systems, in which two (or more) components communicate via an interconnection link; and to the calibration needed to account for drift of conditions related to such parameters during operation of the communication channels." Dkt. No. 30 at 6. The defendant claims that the allegations become implausible

because of the mismatch between the ’556 patent and the “write leveling” procedure performed by the LPDDR3 memory controller. *Id.* at 6–8.

This argument is better suited for claim construction. The defendant’s challenge is based on the specification and not the claim terms. Such an argument is generally reserved for a claim construction analysis. *See, e.g., Glaxo Wellcome, Inc. v. Andry Pharms., Inc.*, 344 F.3d 1226, 1229 (Fed. Cir. 2003) (stating that courts first consider a patent’s specification and prosecution history when construing its claims). Both parties are able to identify portions of the specification that arguably support their interpretation, which is all that is required at this stage. *See Adnexus*, 160 F.4th at 1222 (quoting *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024)). The undersigned therefore rejects this argument.

**3. The Complaint States a Claim for Direct Infringement of the ’279 Patent.**

The ’279 patent protects a “memory controller with clock-to-strobe skew compensation.” U.S. Patent No. 9,437,279, at [54] (filed Nov. 24, 2015). The plaintiff claims that the defendant’s products equipped with DDR3, DDR4, DDR5, and/or LPDDR3 functionality infringe upon at least claim 11 of the ’279 patent. Dkt. No. 27 ¶¶ 107–10. Claim 11 reads:

> A memory controller integrated circuit (IC) comprising:
>
> first timing circuitry to outputting a first timing signal to a memory IC via a first timing signal line;
>
> calibration circuitry to perform a timing calibration operation, including circuitry to:
>
> output a sequence of differently delayed calibration data timing signals to the memory IC via a second timing signal line,
>
> identify one of the calibration data timing signals that compensates for a difference in signal propagation times over the first and second timing signal lines, and
>
> select, as a write timing delay, a delay value applied to generate the identified one of the calibration data timing signals; and

> write circuitry to perform a write operation, including circuitry to:
>
> output address/control signals to be sampled by the memory IC at a time or times corresponding to one or more transitions of the first timing signal,
>
> output first write data to the memory IC in association with the address/control signals, and
>
> output a write data timing signal, delayed according to the write timing delay, to the memory IC via the second timing signal line to time reception of the write data therein.
>
> ’279 patent col. 20–21 l. 47–6.

The plaintiff’s complaint raises specific factual allegations for how one of the defendant’s products, the i.MX 8M Mini Applications Processor, which utilizes DDR3 functionality, reads on the claim elements. *See* Dkt. No. 27 ¶¶ 107–18. Like with the ’556 patent, the complaint again focuses on the “write leveling” procedure performed by the DDR3 functionality to satisfy the claim terms. *See id.* ¶ 112.

The complaint does not raise specific infringement allegations with respect to the DDR4, DDR5, and the LPDDR3 functionalities. *See id.* ¶¶ 107–18. However, the complaint alleges that the defendant’s products with DDR4, DDR5, and LPPDR3 functionalities “infringe in a similar way . . . via their implementation of write leveling.” Dkt. No. ¶ 117. The defendant again challenges whether this satisfies the plaintiff’s pleading burden. Dkt. No. 30 at 9. For the same reasons already stated, the Court finds that it does and rejects this argument.

The defendant also disputes whether the write leveling procedure plausibly plausibly reads on the claim terms, because there is an alleged “mismatch” between the accused write leveling procedure and the method utilized by the ’279 invention. Dkt. No. 30 at 10. The defendant’s argument again attempts to construe the claim terms based on the patent’s specification, which is an exercise better addressed by claim construction. *See Glaxo Wellcome, Inc.*, 344 F.3d at 1229. At this stage, the Court declines to engage in claim construction. The

plaintiff has pled sufficient factual allegations to make infringement under its construction plausible, which is all that is required in its pleadings.

**4. The Complaint States a Claim for Direct Infringement of the ’379 Patent.**

The ’379 patent protects a “memory controller for micro-threaded memory operations.” U.S. Patent No. 10,331,379, at [54] (filed Aug. 12, 2017). The plaintiff contends that the defendant’s products with DDR4 functionality, including its i.MX Applications Processors and Layerscape Processors, infringe upon at least claim 1 of the ’379 patent. Dkt. No. 27 ¶ 117. Claim 1 reads:

> A memory controller to control a memory device, the memory device having a plurality of bank groups, the memory controller comprising:
>
> circuitry to provide a clock signal to the memory device, the clock signal having clock transitions;
>
> a command interface to transmit, to the memory device, row activation commands to instruct row activations and column access commands to instruct column accesses; and
>
> circuitry to schedule issuance of the row activation commands and the column access commands from the command interface, such that
>
> a first interval, defined by a first number of clock transitions to transpire between back-to-back row activations to banks within a common bank group, is longer than a second interval, defined by a second number of clock transitions to transpire between back-to-back row activations to banks within different bank groups, and
>
> a third interval, defined by a third number of clock transitions to transpire between back-to-back column accesses to banks within a common bank group, is longer than a fourth interval, defined by a fourth number of clock transitions to transpire between back-to-back column accesses to banks within different bank groups.
>
> ’379 patent col. 34 l. 30–56.

The plaintiff’s complaint asserts specific factual allegations for how one of the defendant’s products, the i.MX 8M Mini Applications Processor, meets the claim elements but

does not make specific factual allegations regarding any other product. *See* Dkt. No. 27 ¶¶ 127–36. The defendant argues that the plaintiff's failure to raise infringement allegations with respect to the other accused products warrants dismissal. Dkt. No. 30 at 12. But the plaintiff argues that the i.MX 8M Mini Applications Processor are meant to be "exemplary." Dkt. No. 33 at 6.

The Court again finds that the plaintiff's allegations are sufficient at the pleading stage. The plaintiff has identified the functionality that it alleges infringes on the '379 patent, mapped the claim to that functionality in detail, and stated that the functionality infringes across the products that utilize it. At this stage, that is sufficient detail to put the defendant on notice as to which products it must defend. *See JG Techs., LLC*, 156 Fed. Cl. at 712 (collecting cases). The Court therefore rejects this argument.

The defendant next argues that the plaintiff's allegations are implausible because the DDR4 functionality does not meet claim 1's limitation that the first interval be longer than the second interval. Dkt. No. 30 at 13. The defendant also contends that the specification for timing parameters in DDR4 memory devices does not show how the memory controllers in the accused products function so as to plausibly allege infringement. *Id.* at 13–14. But the plaintiff points to a diagram of the DDR4's interval timing found in its complaint that it asserts satisfies claim 1's limitations. Dkt. No. 33 at 10. The plaintiff also argues that the defendant attempts to improperly construe the claim terms at the 12(b)(6) stage. *Id.* at 11.

The Court agrees that the defendant's argument is better suited for claim construction. The defendant's challenge is based in part on language found in the specification and not in the claim language, which is again an exercise generally reserved for claim construction. *See Glaxo Wellcome, Inc.*, 344 F.3d at 1229. The plaintiff is also able to identify portions of the

specification which arguably supports its interpretation of the claim language, which is all that is required at this stage. *See Adnexus*, 160 F.4th at 1222 (quoting *UTTO Inc.*, 119 F.4th at 994).

Finally, the defendant argues that the i.MX 8M Mini Applications Processor's memory controller must be programmed by the end user to indicate the memory type used and the parameters for memory. Dkt. No. 30 at 14. As a result, the defendant contends, there is no default configuration of the accused product that actually practices the claim limitation. *Id.* But the plaintiff replies that it need only assert that the technology is *capable* of being programmed in a manner that infringes on its patent. Dkt. No. 33 at 11 (citing *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

The Court agrees with the plaintiff. In *Intel Corp.*, the Federal Circuit held that direct infringement does not require that the defendant intends for a product to be infringing as long as it is capable of being operated in an infringing manner. 946 F.2d at 832. The plaintiff alleges that the technology is programmable in a way that infringes, which satisfies its burden as to this claim. The undersigned therefore rejects this argument.

**5. The Complaint States a Claim for Direct Infringement of the '466 Patent.**

The '466 patent protects a "periodic calibration for communication channels by drift tracking." U.S. Patent No. 9,160,466, at [54] (filed Mar. 5, 2015). The plaintiff claims that the defendant's products with DDR3, DDR4, DDR5, and/or LPDDR3 functionality, including its i.MX 7Dual Applications Processor, infringe at least claim 1 of the '466 patent. Dkt. No. 27 ¶¶ 133, 135. Claim 1 reads:

> A method of operation in a system that includes a receive component having circuitry to receive a digital signal, the method comprising:
>
> subjecting the receive component to a first calibration during initialization to identify an initial value for a parameter affecting proper reception by the circuitry

> of the receive component of data communicated across a channel as part of the digital signal;
>
> periodically subjecting the receive component to a second calibration to update an existing value of the parameter for drift attributable to change in at least one of operating voltage or temperature; and
>
> wherein the existing value is dependent on the initial value and wherein the second calibration is constrained to occur during a time period that is shorter than a time period of the first calibration.

’466 patent col. 21 l. 40–55.

The plaintiff raises specific factual allegations in its complaint regarding how the LPDDR3 functionality implemented in the i.MX 7Dual Applications Processor infringes on the claim term. Dkt. No. 27 ¶¶133–42. The complaint does not include specific infringement allegations for the DDR4, DDR5, and the LPDDR3 functionalities. *See id.* The complaint alleges, however, that the defendant’s products with DDR4, DDR5, and LPPDR3 functionalities “infringe in a similar way.” Dkt. No. ¶ 139. The defendant again challenges whether this satisfies the plaintiff’s pleading burden. Dkt. No. 30 at 15. For the same reasons already stated, the Court finds that it does and rejects this argument.

Next, the defendant contends that the plaintiff’s allegations are facially implausible in two ways. Dkt. No. 30 at 15–17. The defendant’s first argument relies on the language found in the preamble, which the defendant contends exemplifies the method steps. Dkt. No. 30 at 16. The defendant argues that, based on these method steps, the first step can only be done on a LPDDR3 memory device, which is not part of the accused processors. *Id.* The same issue is found in the second step. *See id.* at 16–17. Second, the defendant claims that the plaintiff’s infringement allegations are implausible because it asserts that the DDRMC of the accused product performs ZQInit during the power up initialization sequence. *Id.* at 16–17. But the defendant argues that the steps of claim 1 must be performed by the “receive component,” which the complaint

contends is the LPDDR3 memory device. *Id.* at 17. Accordingly, the product does not perform one of the claim's steps. *Id.*

The plaintiff argues that the defendant attempts to once again improperly engage in claim construction at the pleadings stage. Dkt. No. 33 at 8. The Court agrees. For the reasons already stated, the Court declines to construe the claim language at this stage and finds the plaintiff has pleaded sufficient factual allegations to support a plausible finding of infringement.

The defendant next argues that the plaintiff fails to identify what component of the "system" constitutes a "receive component having circuitry to receive a digital signal." Dkt. No. 30 at 16. Rather, the allegations identify a component that is from the claim language of a different patent which was asserted in the original complaint and removed from the amended complaint. *Id.* The plaintiff counters that there is no pleading defect. Dkt. No. 33 at 9.

In support of its argument, the plaintiff points to specific language in the complaint which identifies the precise claim language that refers to the "receive component" and explains how the LPDDR3 satisfies that claim term. *Id.* (citing Dkt. No. 27 ¶¶ 136–38). The Court agrees that these paragraphs identify the "receive component" in the accused product and explain how it satisfies the claim language. The defendant's argument is therefore rejected.

Finally, the defendant contends that the plaintiff does not allege how the accused products meet the limitation "wherein the existing value is dependent on the initial value." Dkt. No. 30 at 17. The plaintiff replies that these allegations are found in the complaint in paragraphs 137 and 138. Dkt. No. 33 at 9. The Court agrees and rejects the defendant's final argument.

**6. The Complaint States a Claim for Direct Infringement of the '608 Patent.**

The '608 patent protects a "strobe-offset control circuit." U.S. Patent No. 9,111,608, at [54] (filed Mar. 31, 2014). The plaintiff contends that the defendant's products with LPDDR4

functionality, including its i.MX i.MX Applications Processors and S32 Automotive Processing Platform, infringe upon at least claim 1 of the '608 patent. Dkt. No. 27 ¶ 151. Claim 1 reads:

> An integrated circuit (IC) memory controller comprising:
>
> a first pin to receive a first data signal;
>
> a first adjustable delay element to delay the received first data signal and generate a first delayed data signal;
>
> a second pin to receive a second data signal;
>
> a second adjustable delay element to delay the received second data signal and generate a second delayed data signal;
>
> a pin to receive a strobe signal;
>
> a first sampling circuit to sample the first delayed data signal based on the strobe signal; and
>
> a second sampling circuit to sample the second delayed data signal based on the received strobe signal.
>
> '608 patent col. 14 l. 48–61.

The plaintiff raises specific factual allegations in its complaint regarding how the i.MX 8M Mini Application infringes on the claim term. Dkt. No. 27 ¶¶ 151–59. The complaint does not raise specific infringement allegations with respect to any other products. *See id.* The plaintiff argues, however, that the i.MX 8M Mini Application is meant to be "exemplary." Dkt. No. 33 at 10. The defendant again challenges whether this satisfies the plaintiff's pleading burden. Dkt. No. 30 at 18. For the reasons already stated, the Court finds that it does and rejects this argument.

Next, the defendant argues that the allegations are implausible because the '608 patent teaches and claims a method for read calibration of the relationship between data and accompanying data strobes that the memory controlled receives from the memory device, but the

plaintiff accuses write calibration—a fundamentally different operation—of infringement. Dkt. No. 30 at 18. The defendant's argument relies on language from the patent's specification to argue that there is a "fundamental mismatch" between write calibration and read calibration. *Id.* at 19–20.

The plaintiff argues that the defendant attempts to once again improperly engage in claim construction at the pleadings stage. Dkt. No. 33 at 10. The Court agrees. For the reasons already stated, the Court declines to construe the claim language at this stage and finds the plaintiff has pleaded sufficient factual allegations to support a plausible finding of infringement.

### **B. Indirect Infringement.**

The defendant's sole argument to dismiss the plaintiff's indirect infringement claims is that direct infringement is a prerequisite for indirect infringement, and these claims must be dismissed with any direct infringement claims. Because the plaintiff has sufficiently alleged direct infringement for each of the patents-at-issue, the undersigned rejects this argument and **RECOMMENDS** that the defendant's motion to dismiss be **DENIED** (Dkt. No. 30).

## III. RECOMMENDATION

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that the defendant, NXP USA Inc.'s motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 30) be **DENIED**.

## IV. OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

SIGNED this 30th day of June, 2026.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE